NOTICE:  Summary decisions issued by the Appeals Court pursuant to M.A.C. Rule 23.0, as appearing in 97 Mass. App. Ct. 1017 (2020) (formerly known as rule 1:28, as amended by 73 Mass. App. Ct. 1001 [2009]), are primarily directed to the parties and, therefore, may not fully address the facts of the case or the panel's decisional rationale.  Moreover, such decisions are not circulated to the entire court and, therefore, represent only the views of the panel that decided the case. A summary decision pursuant to rule 23.0 or rule 1:28 issued after February 25, 2008, may be cited for its persuasive value but, because of the limitations noted above, not as binding precedent.  See Chace v. Curran, 71 Mass. App. Ct. 258, 260 n.4 (2008).

COMMONWEALTH OF MASSACHUSETTS

APPEALS COURT

22-P-979

BOYLSTON CP, LLC

vs.

WORCESTER SAND AND GRAVEL COMPANY, INCORPORATED.

MEMORANDUM AND ORDER PURSUANT TO RULE 23.0

After a jury-waived trial in the Superior Court, judgment entered in favor of the defendant, Worcester Sand and Gravel Company, Incorporated (WSG), on its breach of contract counterclaim.  The plaintiff, Boylston CP, LLC (Boylston), appeals, claiming that the judge's finding that a "handshake deal" between the parties' principals regarding Boylston's removal of "surplus materials"[1] from a construction site did not bind WSG was clearly erroneous.  We affirm.

Background.  In 2005, WSG sold a parcel of land (property) in Boylston to Compass Pointe Estates, LLC (Compass).  In connection with the sale, WSG and Compass executed and recorded

_____

[1] In context, "surplus materials" refers to excess gravel and landfill produced by excavation of a residential construction site.

a purchase and sale agreement and a notice of contract that included a provision to reserve WSG's rights to all surplus materials generated by development of the property.  In August, 2015, Boylston purchased the property at a foreclosure sale.

Prior to the purchase, Boylston's principal, James C. Haynes, Sr., learned that Compass had removed significant amounts of surplus materials from the property for use at other development projects, despite the notice of contract.  Haynes contacted WSG's principal, Michael Trotto, Sr., whom he knew "very well," to discuss a similar use of surplus materials at other sites owned by Haynes in the event he bought the property. As a result of their conversations, Haynes and Trotto, Sr. orally agreed that Trotto, Sr. would waive the term in the notice of contract regarding WSG's entitlement to surplus materials (thus permitting Boylston to remove them) in exchange for Haynes using WSG for all his future materials needs.[2]  Based on the oral agreement, Boylston purchased the property subject to the written notice of contract.

In spring of 2016, WSG employees, including Michael Trotto, Jr., came to the property and demanded that Boylston stop removing surplus materials, claiming they belonged to WSG and

---

[2] The agreement to purchase materials from WSG extended to the numerous entities owned by Haynes, including Craig LLC, CJ and J LLC, Goldthwaite LLC, Boylston CP, LLC, and an LLC for a property on Malden Street in Holden.

Boylston CP was violating the notice of contract. On April 6, 2016, Boylston filed a complaint in the Superior Court seeking a declaratory judgment that WSG's contract rights had terminated in 2015. WSG counterclaimed that Boylston had breached the contract by taking surplus materials in violation of the notice of contract. The parties agreed to proceed without a jury under rule 20(2)(h) of the Rules of the Superior Court (2018) and to waive detailed written findings of fact. Following a bench trial in November and December, 2021, the judge returned a special verdict slip and issued brief written findings, concluding that (1) Boylston was not entitled to termination of the notice of contract, (2) Boylston violated the notice of contract by removing surplus materials from the property, and (3) WSG was entitled to damages for Boylston's removal of surplus materials from the date that Trotto, Jr. "made [Haynes] aware that WSG would enforce the terms of the Notice of Contract."

Discussion. "Where a judge makes findings of fact in a bench trial, we review them for clear error." H1 Lincoln, Inc. v. South Washington St., LLC, 489 Mass. 1, 13 (2022). "A trial judge's finding is clearly erroneous only when, although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a

3

mistake has been committed" (quotation and citation omitted). Id.[3]

The judge found that the oral agreement to waive the surplus materials term in the notice of contract in exchange for Haynes's future business was made between Trotto, Sr. and Haynes as individuals and did not bind WSG and Boylston as entities. Because Trotto, Sr. was deceased at the time of trial, the judge heard only from Haynes on this issue.

According to Haynes, he and Trotto, Sr. had known each other for ten to fifteen years and had many informal discussions about the notice of contract until "it came to a point where we believed we had an agreement." He testified that the agreement was never reduced to writing because "[w]e both gave each other our words that we would follow through with our agreement . . . [w]e had talked about it, but it was just an agreement that we made between each other." Based on Haynes's testimony, we

---

[3] When the parties waive detailed written findings of fact, however, "appellate review of the court's decision and of the judgment entered shall be according to the standard of review that would apply to a verdict by a jury in a case tried to a jury and to the judgment entered thereon." Rule 20(8)(b) of the Rules of the Superior Court (2018). "We must uphold [a] jury verdict as long as anywhere in the evidence, from whatever source derived, any combination of circumstances could be found from which a reasonable inference could be drawn in favor of the plaintiff" (quotation and citation omitted). Rabassa v. Cerasuolo, 97 Mass. App. Ct. 809, 814 (2020). This standard of review is arguably more deferential to the trier of fact than the clear error standard.

conclude that there was evidence to support the judge's inference that the agreement regarding surplus materials was between Trotto, Sr. and Haynes as individuals, backed by each person's individual assurance that he would follow through. See Twin Fires Inv., LLC v. Morgan Stanley Dean Witter & Co., 445 Mass. 411, 420 (2005) (finder of fact determines terms of oral agreement from conversation and conduct of parties).

Nor are we persuaded by Boylston's more specific argument that the judge's conclusion that the waiver did not bind WSG was based on a clearly erroneous factual finding that "Trotto, Sr. refused to reduce the waiver to writing." There was evidence that as early as the fall of 2015, Trotto, Sr. was upset based on his "mistaken belief" that Boylston was selling surplus materials in violation of the notice of contract. Haynes also testified that he called Trotto, Sr. in the spring of 2016, after Trotto, Jr. and other WSG employees demanded that Boylston stop removing surplus materials from the property. Haynes learned that Trotto, Sr. was ill, but he expressly asked Trotto, Sr. "if he would be willing to put our agreement in writing" and whether Haynes could "meet with him at his house" to sign an agreement. Trotto, Sr. said he would call Haynes back. In December 2016, approximately eight months after Haynes's telephone call, Trotto, Sr. died without contacting Haynes in the interim or reducing their agreement to writing. On this

5

record, we discern no clear error in the judge's determination that Trotto, Sr.'s lack of response amounted to a refusal to put the waiver of the notice of contract in writing, from which it could reasonably be inferred that Trotto, Sr. never intended for the oral agreement to bind WSG.[4]

In sum, based on the evidence, we are not "left with the definite and firm conviction that a mistake has been committed" (citation omitted). H1 Lincoln, Inc., 489 Mass. at 13. We conclude that Boylston has not shown clear error in the judge's finding that, as a matter of fact, Trotto, Sr.'s waiver of the surplus materials term in the notice of contract was not binding

---

[4] Boylston also challenges the judge's subsidiary findings, including that "in effect [Trotto, Sr.] was shielding the waiver from third parties as a manner of hedging his bets, for example, if the plaintiff went bankrupt or otherwise could not complete the development (as was the case with [Compass])" and "successors at WSG did not know of the waiver or conclude that WSG was bound by it." Because these findings were not essential to the judge's ultimate conclusion, we need not address each one individually.

on WSG.  See <u>Hanover Ins. Co</u>. v. <u>Treasurer & Receiver Gen</u>., 74 Mass. App. Ct. 725, 730 (2009) (appellant's burden to show finding is clearly erroneous).

<u>Judgment affirmed</u>.

By the Court (Massing,
Grant & Brennan, JJ.[5]),

*Joseph F. Stanton*

Clerk

Entered:  September 19, 2023.

---

[5] The panelists are listed in order of seniority.

7